**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Allyson Kesley, et al., | No. CV-14-01105-PHX-NVW |
| Plaintiffs, | **ORDER** |
| v. | |
| Entertainment U.S.A. Incorporated, et al., | |
| Defendants. | |

Before the Court are Plaintiff's Amended Motion for Conditional Certification and Court-Supervised Notice of Pending Collective Action (Doc. 71), Defendants' Brief in Opposition (Doc. 73) and the Reply (Doc. 84). For the reasons that follow, the Motion will be granted in part and denied in part.

## I.    BACKGROUND

Plaintiff Allyson Kesley filed this action in May 2014, seeking damages, on behalf of herself and a group of similarly situated exotic dancers, for alleged violations of the Fair Labor Standards Act ("FLSA"), the Arizona Minimum Wage Act and the Arizona Wage Law. On November 21, 2014, the Court granted Kesley's Motion for Leave to File Second Amended Collective and Class Action Complaint (Doc. 67). In addition to dropping two of the original named Defendants, the Second Amended Complaint (Doc. 74) substitutes Holly Brooke and La'Shaunta Cooper as the class representatives ("Plaintiffs"). Kesley, as well as Kim Jones and Deyonna Wallace, who filed consent forms in October 2014, are listed as opt-in plaintiffs ("Opt-in Plaintiffs").

Plaintiffs seek damages from one individual and six corporate Defendants: (1) Entertainment USA, Inc. of Cleveland d/b/a Christie's Cabaret, "a foreign for-profit corporation doing business in Cleveland, Ohio," (2) J. L. Spoons, Inc., "a foreign for-profit corporation doing business in Brunswick, Ohio," (3) Christie's Cabaret of Glendale, LLC, "a domestic for-profit company doing business in Glendale, Arizona," (4) Sunset Entertainment, Inc. (FN), "a foreign for-profit company doing business in Phoenix, Arizona," (5) Out West Ventures, Inc., "a domestic for-profit company doing business in Guadalupe, Arizona and Tempe, Arizona," (6) Giovani Carandola, Ltd., "a foreign for-profit company doing business in Greensboro, North Carolina," and (7) Steve C. Cooper, "an individual who resides in Tennessee" and "is an owner of the corporate Defendants." Doc. 74 at 4-5. According to the Second Amended Complaint, Defendants operate adult entertainment clubs in Greensboro, North Carolina, three Ohio towns—Brunswick, Canton and Cleveland—and three Arizona cities—Phoenix, Tempe and Glendale—all under the name of "Christie's Cabaret." *Id.* at 9. Plaintiffs allege, "[u]pon information and belief," that "the Defendants are affiliated corporate entities under common ownership and control and are related organizations through, for example, common membership, governing bodies, trustees, and/or officers and benefit plans." *Id.* at 5.

Plaintiffs Brooke and Cooper allege they were previously employed as exotic dancers at Defendants' clubs, in Phoenix and Tempe, respectively. *Id.* at 10; Doc. 71-4 at 1; Doc. 71-5 at 1. Opt-in Plaintiffs also allegedly worked for Defendants as exotic dancers. Doc. 74 at 10. Defendants concede that Jones at one time worked at the Phoenix club, Doc. 73 at 7, where Kesley claims she, too, was formerly employed, Doc. 71-3 at 1. But neither the Second Amended Complaint nor any declarations submitted to the Court make clear where Wallace danced.

The Second Amended Complaint alleges that Plaintiffs had to pay Defendants a "house fee" in order to be allowed to perform on any given shift. Doc. 74 at 10. When they did perform, Plaintiffs allege they received no wages directly from Defendants and

instead had to rely exclusively on tips from Defendants' customers.  *Id.*  Plaintiffs were allegedly forced to share those tips with "other non-service employees who do not customarily receive tips, including the 'house mom,' disc jockeys, and the bouncers."  *Id.*  To enforce this arrangement, Defendants sold customers "Christie's Cabaret Certificates," which patrons could use to purchase dances from Plaintiffs.  *Id.*  Plaintiffs would return these certificates to Defendants, who would allegedly remit to Plaintiffs a cash sum less than the full value of the certificates; the cut retained by Defendants "grossly exceed[ed] the fee paid by the club as a merchant fee to the credit card companies."  *Id.* at 10-11.  Taken together, Plaintiffs allege, these practices pushed their total compensation well below both the federal and state minimum wages.  In addition, Plaintiffs were often required to work more than 40 hours in a week but were not compensated at one-and-a-half times their usual salary for those extra hours.  *Id.* at 12.  According to Plaintiffs, Defendants justified these alleged willful violations of federal law by classifying Plaintiffs as independent contractors rather than employees.  *Id.*; *see also Pfohl v. Farmers Ins. Grp.*, NO. CV 03-3080 DT (RCx), 2004 U.S. Dist. LEXIS 6447, at *11 (C.D. Cal. Mar. 5, 2004) ("Independent contractors are not covered by the FLSA; that is, there must be an employer-employee relationship for liability to accrue for alleged unpaid overtime." (citation omitted)).  Defendants admit in their Answer to the Second Amended Complaint that "dance performers do not receive either regular or time-and-a-half wages, or any other compensation from them," but "deny, in any way, that they have violated the FLSA."  Doc. 83 at 9.

Plaintiffs filed the instant Motion on November 4, 2014, seeking certification under the FLSA of a class defined as "[a]ll current and former exotic dancers who worked at any of the seven Christie's Cabarets at any time during the three year period before the granting of this Motion up to the present."  Doc. 71 at 4.  The putative collective seeks wages and overtime compensation allegedly denied as a result of Defendants' willful FLSA violations.  Although Plaintiffs have also alleged violations of

1    Arizona law, they do not at this time seek certification of a Rule 23 class action on those

2    claims.  *Id.* at 3 n.3.

3

4    **II.    ANALYSIS**

5            **A.    Fair Labor Standards Act**

6            "The FLSA provides that a covered employer shall not employ any employee 'for

7    a workweek longer than forty hours unless such employee receives compensation for his

8    employment in excess of the hours above specified at a rate not less than one and one-

9    half times the regular rate at which he is employed.'"  *Wood v. TriVita, Inc.*, No. CV-08-

10   0765-PHX-SRB, 2009 U.S. Dist. LEXIS 64585, at *3-4 (D. Ariz. Jan. 22, 2009) (quoting

11   29 U.S.C. § 207(a)(1)).  The law also mandates that "[e]very employer shall pay to each

12   of his employees who in any workweek is engaged in commerce or in the production of

13   goods for commerce, or is employed in an enterprise engaged in commerce or in the

14   production of goods for commerce, wages" that are "not less than" specified statutory

15   rates.  29 U.S.C. § 206(a)(1).  "Any employer who violates the provisions of [§ 206 or §

16   207] shall be liable to the employee or employees affected in the amount of their unpaid

17   minimum wages, or their unpaid overtime compensation, as the case may be, and in an

18   additional equal amount as liquidated damages."  *Id.* § 216(b).  An action to recover these

19   damages "may be maintained against any employer … in any Federal or State court of

20   competent jurisdiction by any one or more employees for and in behalf of himself or

21   themselves and other employees similarly situated."  *Id.*  "The FLSA requires class

22   members who are not named in the complaint to affirmatively opt in to the class by filing

23   a written consent with the Court."  *Wood*, 2009 U.S. Dist. LEXIS 64585, at *5 (citing 29

24   U.S.C. §§ 216(b), 256).  "The district court has discretion to determine whether a

25   collective action is appropriate."  *Id.* at *6 (citation and internal quotation marks omitted).

26           "Section 216(b) does not define 'similarly situated,' and the Ninth Circuit has not

27   construed the term. Federal district courts have taken at least three approaches to

28   determining whether plaintiffs are 'similarly situated' for purposes of § 216(b): (1) a two-

tiered case-by-case approach, (2) the incorporation of the requirements of Rule 23 of the current Federal Rules of Civil Procedure, or (3) the incorporation of the requirements of the pre-1966 version of Rule 23 for 'spurious' class actions. However, district courts within the Ninth Circuit generally follow the two-tiered or two-step approach for making a collective action determination." *Colson v. Avnet, Inc.*, 687 F. Supp. 2d 914, 925 (D. Ariz. 2010) (citations and some internal quotation marks omitted).

"Under the two-step approach, the court determines, on an ad hoc case-by-case basis, whether plaintiffs are similarly situated. This requires the court to first make an initial 'notice stage' determination of whether plaintiffs are 'similarly situated.' At this first stage, the court require[s] nothing more than substantial allegations that the putative class members were together the victims of a single decision, policy, or plan. If a plaintiff can survive this hurdle, the district court will conditionally certify the proposed class and the lawsuit will proceed to a period of notification, which will permit potential class members to opt-into the lawsuit. Once the notification period ends, the Court moves on to the second step of the certification process. At the second step, in response to a motion to decertify the class filed by a defendant, the court makes yet another determination whether the proposed class members are similarly situated; this time, however, the court utilizes a much stricter standard to scrutinize the nature of the claims." *Id.* (alteration in original) (citations and internal quotation marks omitted).

"While conditional certification at the first stage is by no means automatic, Plaintiffs' burden is light. All that need be shown by the plaintiff is that some identifiable factual or legal nexus binds together the various claims of the class members in a way that hearing the claims together promotes judicial efficiency and comports with the broad remedial policies underlying the FLSA. Given the light burden, motions to conditionally certify a class for notification purposes are 'typically' granted. To proceed to the notification stage of the litigation, Plaintiffs' allegations need neither be 'strong [n]or conclusive.'" *Id.* at 925-26 (alteration in original) (citations and some internal quotation marks omitted).  "Courts recognize that collective action notification normally occurs

1    before the Parties have had the chance to engage in extensive fact discovery. That is why

2    in making a determination in whether to conditionally certify a proposed class for

3    notification purposes only, courts do not review the underlying merits of the action." *Id.*

4    at 926 (citations omitted).  The court's determination at this first step is "based primarily

5    on the pleadings and any affidavits submitted by the parties." *Hutton v. Bank of Am.*, No.

6    CV 03-2262-PHX-ROS, 2007 U.S. Dist. LEXIS 97516, at *2 (D. Ariz. Mar. 31, 2007)

7    (citations and internal quotation marks omitted).

8         **B.     Plaintiffs' Case**

9         Like virtually every other district court in the Ninth Circuit, this Court will apply

10   the two-step approach to FLSA certification.  Plaintiffs easily satisfy this test.

11        The Second Amended Complaint alleges that Defendants had a "practice of failing

12   to pay Plaintiffs … time-and-a-half rate for hours in excess of forty per workweek" and a

13   "practice of failing to pay Plaintiffs … at the required minimum wage rate."  Doc. 74 at

14   15-16.   In support of this assertion, the declarations submitted to the Court describe

15   "policies" that dancers were required to observe as well as "rules propagated by

16   Christie's Cabaret that applied to all the entertainers."  *E.g.*, Doc. 71-4 at 1.  Among these

17   policies are those listed above: charging a house fee, selling "Christie's Cash" to

18   customers and retaining a portion of Plaintiffs' tips.  The declarations make clear that

19   Defendants' practices "applie[d] to all the exotic dancers," even if "some exotic dancers

20   may have worked more or fewer hours than" others.  *Id.* at 3.  More broadly, Plaintiffs

21   allege that Defendants, whose wage and hour policies "are and were centrally and

22   collectively dictated, controlled, and ratified," have "misclassified Plaintiffs … as

23   independent contractors to avoid Defendants' obligation to pay them pursuant to the

24   FLSA."  Doc. 74 at 6, 12.  These assertions, supported by Plaintiffs' declarations, clearly

25   constitute "substantial allegations that the putative class members were together the

26   victims of a single decision, policy, or plan."  *Colson*, 687 F. Supp. 2d at 925 (citation

27   and internal quotation marks omitted).   On the face of the pleadings, Plaintiffs have

28

1  carried their "light" burden of showing that they are similarly situated to other putative

2  class members.  *Id.*

3         Defendants do not appear to seriously contest this conclusion.  Nevertheless, they

4  urge the Court to deny collective certification for a number of reasons.  The Court will

5  address these grounds in turn.

6                    **1.      Sufficiency of Plaintiffs' Allegations**

7         To win certification, an FLSA plaintiff must show—based on affidavits and

8  declarations submitted in support of the pleadings—that she is at least potentially

9  "similarly situated" to all potential class members, not merely some portion of them.

10  Where a plaintiff cannot adduce even minimal evidence that a subset of possible opt-in

11  plaintiffs is "similarly situated," the class cannot be certified as to that subset.  *See*

12  *Burkhart-Deal v. Citifinancial, Inc.*, No. 07-1747, 2010 U.S. Dist. LEXIS 9534, at *11-

13  12 (W.D. Pa. Feb. 4, 2010) ("It is not sufficient for Plaintiff to show that she is similarly

14  situated to just anyone; instead, she must share the requisite nexus with the employees on

15  behalf of whom [she is] seeking to pursue claims. In this case, Plaintiff seeks to pursue

16  claims on behalf of FSRs nationwide; thus, for purposes of this litigation, she must satisfy

17  the Court that she is 'similarly situated' to FSRs nationwide." (alteration in original)

18  (citation, footnote and internal quotation marks omitted)).

19         Courts have divided over how stringently to apply this principle.  In *Colson*, the

20  plaintiff, a sales and marketing representative working in the defendant's Oregon office,

21  sought certification of an FLSA class "consisting of all current and former SMRs

22  employed by Defendant Avnet, Inc., along with 'all other persons employed by

23  Defendant in the United States who perform or performed substantially the same duties

24  as SMR employees.'"  687 F. Supp. 2d at 917, 926.  The plaintiff argued that "because

25  Defendant classified all of its SMR employees as exempt, and because all SMR

26  employees perform essentially the same tasks nationwide, these elements standing alone

27  justify the Court in conditionally certifying a nationwide class for notification purposes

28  under the FLSA."  *Id.* at 927.  After noting that "the mere classification of a group of

employees—even a large or nationwide group—as exempt under the FLSA is not by itself sufficient to constitute the necessary evidence of a common policy, plan, or practice," the court found that the evidence submitted by the plaintiff did "not come close to establishing a sufficient evidentiary basis that all SMRs performed similar tasks and were, as a discernable class, potentially misclassified as employees exempt from over-time pay requirements." *Id.* at 927-28.

That evidence consisted primarily of a declaration in the plaintiff's own name, apparently asserting that defendant treated the sales and marketing representatives at its 40 other offices across the country similarly to the plaintiff.[1] *See id.* at 928. Because the plaintiff "had minimal contact with SMR employees from other states," the court dismissed this evidence as being "based on nothing more than her opinions, which are vague and appear to be based on unspecified hearsay from unidentified sources." *See id.* "While Ms. Colson's declaration has some value in describing her own experience," the court concluded, "it has no probative value in establishing that she, along with other SMRs across the country, 'were together the victims of a single decision, policy, or plan.'" *Id.* at 928-29 (citation omitted). As a result, the court found "Plaintiff's claim that she is similarly situated to all SMRs" to be "insupportable" and therefore denied certification of the plaintiff's desired nationwide class. *Id.* at 929-30.

Likewise, the *Burkhart-Deal* court denied FLSA certification of a putative nationwide class of the defendant's financial sales representatives. 2010 U.S. Dist. LEXIS 9534, at *19-20. The lead plaintiff had submitted "affidavits from ten employees who worked, at pertinent times, at seventeen Pennsylvania branches; one employee who worked at two branches in Washington state; and two employees who worked at three California branches," none of whom "purport[ed] to have personal knowledge of violations beyond the branches in which they worked." *Id.* at *12-13. For that reason,

---

[1] The only other evidence before the court was a pair of declarations, one from the plaintiff's lawyer and another from a man who "was never even employed by Defendant as a SMR, but instead worked as a trainee and then administrative assistant for most of his tenure with Defendant." *Id.* at 929.

the court found "Plaintiff has proffered no evidentiary basis for concluding that employees at branches in the remainder of the country were affected," and it limited class certification to "those branch offices identified in the declarations where Plaintiff has given reason to believe that violations occurred." *Id.* at *13, 20.  This conclusion turned in part, however, on the discretionary nature of the alleged FLSA violation—which, "unlike those facially across-the-board actions or policies in which nationwide notice has been found appropriate," "rested, in some branches, on its implementation or interpretation by individual managers and employees." *See id.* at *15-16.

Other courts have been more forgiving.  The lead plaintiffs in *Allen v. McWane, Inc.*, NO. 2:06-CV-158 (TJW), 2006 U.S. Dist. LEXIS 81543 (E.D. Tex. Nov. 7, 2006), filed declarations from workers at six of the defendant's 13 facilities, which showed that "the basic tasks performed by the employees were all similar."  2006 U.S. Dist. LEXIS 81543, at *10, 15.  "Although the affidavits and declarations d[id] not encompass all of the Defendant's facilities," the court nevertheless found that the plaintiffs had "come forward with competent evidence that similarly situated potential plaintiffs exist." *Id.* at *15-16.  After determining that "Plaintiffs ha[d] satisfied their burden to demonstrate that a company-wide policy existed," the court certified a collective action as to all 13 facilities. *Id.* at *17.  Decisions from some other courts reach similar conclusions. *E.g.*, *Adams v. Inter-Con Sec. Sys.*, 242 F.R.D. 530, 537-38 (N.D. Cal. 2007) (certifying class of employees at over 500 of defendants' locations based on affidavits covering fewer than 80 locations and opt-in consent forms signed by "383 other potential plaintiffs employed in fifty cities under at least six contracts").

The disparate results reached in these cases confirm a central tenet of the law governing FLSA certification: "Determining whether a collective action is appropriate is within the discretion of the district court." *Leuthold v. Destination Am.*, 224 F.R.D. 462, 466 (N.D. Cal. 2004) (citation omitted).  Certification will depend on the facts and circumstances of each individual case; the relevant factors cannot be reduced to a checklist.  Here, Defendants argue that many of Plaintiffs' proposed opt-in plaintiffs

should be excluded because the pleadings and attached declarations provide an insufficient basis for concluding that the alleged practices and wage violations occurred at all of Defendants' establishments.  Specifically, the only declarations provided to the Court come from dancers who ostensibly worked at clubs in Phoenix (Brooke and Kesley) and Tempe (Cooper).  There are no declarations authored by dancers at the Glendale, Greensboro, Brunswick, Canton or Cleveland locations.[2]

The Second Amended Complaint alleges that "[a]ll clubs are operated in the same manner—misclassifying dancers as independent contractors."  Doc. 74 at 2.  In support of this assertion, Plaintiffs claim they "worked with other dancers who worked at various Christie's Cabaret locations" and therefore "have first-hand personal knowledge of the same pay violations throughout Defendants' multiple establishments."  *Id.* at 17-18.  In addition, "other exotic dancers at Defendants' various establishments have shared with [Plaintiffs] similar pay violation experiences as those described in this complaint."  *Id.* at 18.  Plaintiffs' declarations are somewhat less bold.  Brooke affirms, for instance, that "I know the practices I described herein applied equally to all dancers at the Christie's Cabaret club located in Phoenix, Arizona."  Doc. 71-4 at 3.  Cooper makes a similar statement regarding the Tempe club.  Doc. 71-5 at 4.  Neither declaration addresses the conditions at or policies of any of Defendants' other establishments.  But even if Brooke and Cooper—or Kesley, whose declaration is virtually identical to Brooke's, *see* Doc. 71-3—do have personal knowledge of the other clubs' practices, that knowledge appears to be based on nothing more than the "unspecified hearsay from unidentified sources" that the court in *Colson* found insufficient.  687 F. Supp. 2d at 928.

---

[2] Plaintiffs attach declarations from Alexandria Cox and Jennifer Martin, who both claim to have danced at Defendants' Cleveland club.  Doc. 71-6, 71-7.  Those declarations were originally sworn as part of a similar 2013 lawsuit brought in the U.S. District Court for the Northern District of Ohio.  The court in that case denied collective certification after determining that named plaintiff Cox, who had danced at the club for only two days, had "presented what has proven through limited discovery to be a Declaration rife with false statements of which she has no direct knowledge."  *Cox v. Entm't U.S.A. of Cleveland, Inc., d/b/a Christie's Cabaret*, NO. 1:13 CV 2656 (N.D. Ohio Aug. 29, 2014), Doc. 30 at 3-5.  The Court will therefore not consider the Cox or Martin declarations in deciding Plaintiffs' Motion.

1    Given that Plaintiffs have already experienced such difficulty finding others to

2    join their case—even at the clubs where they themselves purportedly worked—it makes

3    little sense to expand the class to include dancers in farther-flung locations on the basis of

4    such flimsy evidence.  This is particularly so where the various corporate Defendants are

5    separate legal entities, rather than branches of a single defendant corporation,

6    notwithstanding Defendant Cooper's alleged ownership of each corporate Defendant.  If

7    exotic dancers in Ohio or North Carolina can make substantial allegations regarding wage

8    violations at the clubs where they dance, they are free to present their claims to courts in

9    those states.  But bringing those as-yet unsubstantiated allegations to this Court does not

10   promote the orderly, fair and expeditious adjudication of legal controversies.  As to

11   Defendants' clubs in Glendale, Greensboro, Brunswick, Canton and Cleveland, Plaintiffs

12   have failed to identify a "factual nexus which binds the named plaintiffs and the potential

13   class members together as victims of a particular alleged policy or practice."  *Id.* at 926

14   (citation and internal quotation marks omitted).

15           **2.    Suitability of the Named Plaintiffs**

16           Defendants next argue that Plaintiffs and Opt-in Plaintiffs are not "suitable

17   representative[s] for the broad collective that is sought" because of the details of their

18   employment—or, rather, independent contractor status.  Doc. 73 at 3 (capitalization

19   omitted).  Specifically, Defendants charge that Brooke has not worked at any of

20   Defendants' establishments since 2008, when she was fired by the Phoenix club "for

21   fighting with another entertainer."  *Id.* at 5.  Defendants support this assertion by

22   attaching declarations from the Phoenix general manager and three other individuals who

23   worked at the club both before and after 2008, and who claim they have not seen Brooke

24   since then.  *See* Doc. 73-9, 73-10, 73-12, 73-13.  Five other declarants, who began

25   working for the club after 2008, each attest they have never known Brooke.  *See* Doc. 73-

26   5, 73-6, 73-7, 73-8, 73-14.  Plaintiffs alleged, in an August 22, 2014 brief supporting a

27   previous motion, that "Ms. Brooke was re-hired at the Phoenix location in December

28   2008 and continued to work there during the day shift until July 2013."  Doc. 37 at 4.

1    Despite promising to "affirm these facts" in a future supplemental declaration, *id.* n.10,

2    however, Plaintiffs have failed to submit any supporting documentation.

3         This dispute matters because an FLSA claim seeking unpaid minimum wages or

4    unpaid overtime compensation must "be commenced within two years after the cause of

5    action accrued … except that a cause of action arising out of a willful violation may be

6    commenced within three years after the cause of action accrued."  29 U.S.C. § 255(a).

7    Even assuming Defendants' conduct was willful, therefore, Brooke cannot state a claim if

8    she last worked for Defendants six years ago.  The "court does not decide factual disputes

9    during the first stage of the certification process."  *Longnecker v. Am. Express Co.*, No.

10   2:14-cv-0069-HRH, 2014 U.S. Dist. LEXIS 114501, at *19 (D. Ariz. Aug. 18, 2014)

11   (citations omitted).  Still, "[a]t all times, Plaintiff has the burden of proving she meets the

12   'similarly situated' requirement."  *Rose v. Wildflower Bread Co.*, No. CV09-1348-PHX-

13   JAT, 2010 U.S. Dist. LEXIS 43501, at *33 (D. Ariz. May 4, 2010) (citation omitted).

14   "To satisfy this burden, plaintiff must provide the court with detailed allegations

15   supported by [declarations] which successfully engage a defendant's affidavits to the

16   contrary."  *Colson*, 687 F. Supp. 2d at 928 (alteration in original) (citation and internal

17   quotation marks omitted).

18        Here, despite expressly vowing to do so, Plaintiffs have not engaged Defendants'

19   affidavits asserting that Brooke has not worked at the Phoenix club since 2008.

20   Plaintiffs' burden at step one is light, and for this reason courts "declin[e] to resolve a

21   dispute between competing affidavits at the first-step analysis stage for FLSA collective

22   certification."  *Chastain v. Cam*, No. 3:13-cv-01802-SI, 2014 U.S. Dist. LEXIS 102465,

23   at *6 (D. Or. July 28, 2014) (citation omitted).  But here the affidavits are not in conflict.

24   And light though it may be, Plaintiffs have not carried the burden of showing that Brooke

25   is similarly situated to the class of dancers who worked "at any of the seven Christie's

26   Cabarets at any time during the *three year period* before the granting of this Motion up to

27   the present."  Doc. 71 at 4 (emphasis added).

28

Were Brooke's declaration the only one attesting to personal knowledge of and experience with the policies employed by the Christie's Cabaret in Phoenix, Plaintiffs' failure to supplement might preclude certification as to dancers who worked there. *See supra* Part II.B.1.  But courts deciding FLSA certification motions often rely on declarations submitted by non-named plaintiffs, *e.g.*, *Adams*, 242 F.R.D. at 538 (noting that "Plaintiffs in this case have provided thirteen declarations from officers employed at locations *other than their own* who have been subject to the same alleged policy" (emphasis added)), and Opt-in Plaintiff Kesley claims she, too, worked at Defendants' Phoenix location.

Defendants challenge Kesley's statement that she worked at Defendant Sunset Entertainment's Phoenix dance club for three months in the summer of 2013.  A "thorough and diligent search" of Sunset Entertainment's records, ordered by its president, Defendant Cooper, allegedly produced no evidence that Kesley ever worked there.  Doc. 73 at 3.  According to exhibits attached to Defendants' Brief, seven individuals who worked at the Sunset Entertainment club—and who, "by dint of their job duties, interacted with the independent contractor entertainers on a daily basis"—did not recognize Kesley in the photograph that she produced during discovery.  *Id.* at 4.[3] Nevertheless, Kesley reaffirmed, in a Supplemental Declaration submitted on August 22, 2014, that "[w]hile [she] do[es] not remember the exact dates, [she] worked as an exotic dancer for Christie's Cabaret during 2013" at its Phoenix location.  Doc. 37-1. Because it "is not the court's [role] to resolve factual disputes . . . at the preliminary certification stage of an FLSA collection action," *Barrera v. U.S. Airways Grp., Inc.*, No. CV-2012-02278-PHX-BSB, 2013 U.S. Dist. LEXIS 124624, at *16 (D. Ariz. Aug. 30, 2013) (ellipsis in original) (citation and internal quotation marks omitted), determination of whether Kesley in fact worked at Defendants' Phoenix club will have to await discovery.

---

[3] Defendants also report in their Brief that they hired a private investigator to conduct a background check on Kesley, which turned up several criminal convictions and probation violations.  The legal significance of these alleged scrapes with the law is unclear, and so the Court will ignore them.

In the meantime, Plaintiffs have—barely—satisfied their light burden for preliminary FLSA certification of a class comprising dancers at Defendants' Phoenix and Tempe establishments.

Finally, Defendants claim Jones last worked at Defendants' Phoenix club in May 2011, outside the two- or three-year statute of limitations for FLSA actions.  A declaration from the club's general manager attests to this fact, Doc. 73-12 at 2, and Plaintiffs have offered no affidavit to rebut it.  Resolving this factual dispute is premature at this stage, especially since it does not bear on whether Plaintiffs are similarly situated to the class of all dancers at Defendants' Phoenix and Tempe locations.  Accordingly, the Court will defer this question until discovery has concluded.

### 3.      Personal Jurisdiction

Almost as an afterthought, Defendants argue that the Court lacks personal jurisdiction over the Ohio and North Carolina Defendants.  Although the question is moot in light of the conclusion in Part II.B.1, the Court will address the issue briefly.

"There are two independent limitations on the court's power to exercise personal jurisdiction over a non-resident defendant: the applicable state personal jurisdiction rule and constitutional principles of due process. Arizona's jurisdictional statute is co-extensive with federal due process requirements; therefore, jurisdictional inquiries under state law and federal due process standards merge into one analysis. Arizona's long-arm statute provides for personal jurisdiction to the extent permitted by the Due Process Clause of the United States Constitution." *Stickle v. SCI W. Mkt. Support Ctr., L.P.*, No. CV 08-083-PHX-MHM, 2008 U.S. Dist. LEXIS 83315, at *11-12 (D. Ariz. Sept. 30, 2008) (citations omitted).  "The exercise of jurisdiction over a non-resident defendant violates the protections created by the due process clause unless the defendant has 'minimum contacts' with the forum state such that the exercise of jurisdiction 'does not offend traditional notions of fair play and substantial justice.' Personal jurisdiction may be either general or specific." *Id.* at *12 (citation omitted).

"General jurisdiction exists where the defendant's contacts with the forum state are so substantial or continuous and systematic that jurisdiction exists even if the cause of action is unrelated to those contacts. The standard for establishing general jurisdiction is 'fairly high.' The defendant's contacts must approximate physical presence in the forum state." *Id.* at *12-13 (citations omitted).  "Specific jurisdiction exists where the cause of action arises out of or relates to a defendant's activities within the forum. Specific jurisdiction is analyzed using a three-prong test: (1) the non-resident defendant must purposefully direct its activities or consummate some transaction with the forum or a resident thereof; or perform some act by which it purposefully avails itself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws; (2) the claim must be one which arises out of or results from the defendant's forum-related activities; and (3) the exercise of jurisdiction must be reasonable. Each of these conditions is required for asserting jurisdiction."  *Id.* at *13 (citations omitted).

"A showing that a defendant 'purposefully availed' itself of the privilege of doing business in a forum state typically consists of evidence of the defendant's actions in the forum, such as executing or performing a contract there. … The purposeful availment test is met where the defendant has taken deliberate action within the forum state or if he has created continuing obligations to forum residents."  *Id.* at *13-14 (citations and internal quotation marks omitted).  "The second prong of the specific jurisdiction test requires that the claim arise out of or result from the defendant's forum-related activities. A claim arises out of a defendant's conduct if the claim would not have arisen 'but for' the defendant's forum-related contacts."  *Id.* at *14 (citation omitted).  "Once the plaintiff has satisfied the first two prongs, the defendant bears the burden of overcoming a presumption that jurisdiction is reasonable by presenting a compelling case that specific jurisdiction would be unreasonable. Seven factors are considered in assessing whether the exercise of jurisdiction over a non-resident defendant is reasonable."  *Id.* at *14-15 (citations omitted) (listing factors).

The Ohio and North Carolina Defendants clearly lack the "substantial or continuous and systematic" contacts with Arizona that are necessary for general jurisdiction. *Id.* at *12 (citation omitted). Plaintiffs plead no facts that might suggest a different conclusion. As for specific jurisdiction, **nothing in the Second Amended Complaint suggests the Ohio and North Carolina Defendants** "'purposefully availed' [themselves] of the privilege of doing business" **in Arizona.** *Id.* at *14 (citation omitted). **Plaintiffs allege that all Defendants "share employees, have a common management, pool their resources, operate from the same headquarters, have common ownership, and have the same operating name." Doc. 74 at 9. But even if this is true, it does not suggest the Ohio and North Carolina Defendants took** "actions in the forum, such as executing or performing a contract there." *Stickle*, 2008 U.S. Dist. LEXIS 83315, at *14 (citation omitted). Nor have Plaintiffs stated claims that "arise out of or result from the [Ohio and North Carolina Defendants'] forum-related activities." *Id.* Instead, any claims against those Defendants would be based on conduct that took place exclusively within the borders of their respective states. Plaintiffs have failed to carry their burden as to the first two prongs of the specific jurisdiction analysis; therefore, the Court will not address the seven factors that make up the third prong.

In their Reply, Plaintiffs attempt to ground personal jurisdiction in their allegation that Defendants collectively constitute "a 'single enterprise' within the meaning of 3(r)(1) of the FLSA." Doc. 84 at 3. The statutory provision to which Plaintiffs cite defines "enterprise" for FLSA purposes as "the related activities performed (either through unified operation or common control) by any person or persons for a common business purpose, and includes all such activities whether performed in one or more establishments or by one or more corporate or other organizational units including departments of an establishment operated through leasing arrangements." 29 U.S.C. § 203(r)(1). Even if Defendants fit this definition, the existence of personal jurisdiction does not follow. The FLSA's definition of "enterprise" serves to identify which potential defendants are subject to the act's requirements. "In order to be covered by the FLSA's

overtime rules, employees must be 'engaged in commerce or in the production of goods for commerce, or . . . employed in an enterprise engaged in commerce.' 29 U.S.C. § 207(a)(1). In other words, coverage exists if either the employee is engaged in commerce (individual coverage), 29 U.S.C. § 203(b) (defining 'commerce' as 'trade, commerce, transportation, transmission, or communication among the several States or between any State and any place outside thereof'), or the employer is an enterprise engaged in commerce (enterprise coverage), 29 U.S.C. § 203(s) (defining 'enterprise engaged in commerce' as enterprises that, inter alia, have annual gross revenue of $ 500,000 or greater)." *Chao v. A-One Med. Servs.*, 346 F.3d 908, 914 (9th Cir. 2003) (ellipsis in original) (citation omitted).   That is, the "enterprise" label may determine which employers are obligated to comply with the FLSA, but it is irrelevant to the personal jurisdiction inquiry.

Accordingly, this Court cannot assert jurisdiction over the Ohio and North Carolina Defendants.   Even if it could, however, the discretionary factors governing FLSA certification would counsel against including the Ohio and North Carolina Defendants in Plaintiffs' class.   If this case proceeds to the merits, all members of the class will eventually have to prove up their damages.   Requiring dancers from Ohio and North Carolina to travel 2,000 miles in order to substantiate their claims in this Court would cause significant inconvenience.   As explained above, *see supra* Part II.B.1, those dancers are free to seek a remedy from courts in their own states, where the burden on all parties would be appreciably less onerous.   Whether as a matter of jurisdictional requirements or merely sound judgment, it does not make sense for this Court to certify Plaintiffs' class as to the Ohio and North Carolina Defendants.

### C.   Statute of limitations

As explained above, an FLSA claim for unpaid minimum wages or unpaid overtime compensation must "be commenced within two years after the cause of action accrued … except that a cause of action arising out of a willful violation may be commenced within three years after the cause of action accrued."   29 U.S.C. § 255(a).

1    Plaintiffs have alleged that Defendants' failure to pay minimum wage and overtime
2    compensation was willful.  Doc. 74 at 12.  Absent discovery, the Court cannot determine
3    whether this allegation is accurate.   Therefore, Plaintiffs' collective action will be
4    provisionally certified for a period of three years prior to the filing of Plaintiffs' Second
5    Amended Complaint.  *See* 29 U.S.C. § 256(a); *Anderson v. Ziprealty, Inc.*, No. CV 12-
6    0332-PHX-JAT, 2013 U.S. Dist. LEXIS 63817, at *9-10 (D. Ariz. May 3, 2013)
7    (preliminarily applying three-year statute of limitations, pending discovery).   The
8    limitations period for any future opt-in plaintiffs will cover the three years immediately
9    preceding the date on which they file their consent forms.  *See* 29 U.S.C. § 256(b).
10   Following discovery, Defendants may file a motion to decertify the class on the basis that
11   any violations were not willful and the two-year limitations period should therefore
12   apply.  *See Anderson*, 2013 U.S. Dist. LEXIS 63817, at *10.

13           **D.     Form of Notice**

14           Plaintiffs ask the Court to authorize mailing of the "Important Notice to Dancers at
15   Christie's Cabaret" (Doc. 71-1) and "Consent to Join Wage Claim Against Christie's
16   Cabaret" (Doc. 71-2) that they lodged with their Motion.  Plaintiffs propose (1) to send
17   the Notice and Consent by both first class mail and email, (2) to "hire a third party class
18   action administration company to oversee the mailing of the notice and the forms as it
19   deems appropriate," Doc. 71 at 14, (3) to allow potential opt-in plaintiffs to "execute their
20   consent forms online through an electronic signature service," *id.* at 15, and (4) to send
21   the Notice a second time to any potential opt-in plaintiffs who have not submitted consent
22   forms within thirty days of Plaintiffs' original mailing.  Defendants do not resist these
23   proposals, and so Plaintiffs' requests regarding the mailing of their Notice and Consent
24   will be granted.

25           For a variety of reasons, however, Defendants do object to the content of the
26   proposed Notice.

27           First, Defendants contend the proposed Notice "fails to advise potential opt-ins
28   that they may be required to participate in discovery."  Doc. 73 at 13.  In their Reply,

Plaintiffs agree to add to the Notice an admonition that "By joining this case, you may be required to respond to written discovery, appear for a deposition and/or testify at trial." Doc. 84 at 6.  Plaintiffs will be ordered to include this language in their revised Notice.

Second, Defendants argue the Notice should warn opt-in plaintiffs "in the event the Defendants are successful, that the plaintiffs would be liable for the costs of the litigation." Doc. 73 at 13.  The only possible purpose this admonishment could serve is to "discourage participation in the lawsuit." *Green v. Exec. Coach & Carriage*, 895 F. Supp. 2d 1026, 1030 (D. Nev. 2012) (citation and internal quotation marks omitted). Accordingly, Defendants' requested addition will be denied.  *See Whitehorn v. Wolfgang's Steakhouse, Inc.*, 767 F. Supp. 2d 445, 451 (S.D.N.Y. 2011) (declining a similar request).

Third, Defendants insist the notice should "advise a potential plaintiff that if she is deemed to be an employee, that the value of her claim could be offset by the amount of the service fees for dances that she obtained and retained." Doc. 73 at 13.  For the reason explained immediately above, this request will also be denied.

Fourth, Defendants request inclusion of a provision informing potential opt-in plaintiffs that by joining the class, they may expose themselves to liability for counterclaims.  To support this request, Defendants cite to *Lessard v. Metro. Life Ins. Co.*, 103 F.R.D. 608 (D. Me. 1984), where the district court, in a Rule 23 class action case, directed the named plaintiffs to include in their notice "a thorough explanation in *plain language,* to be approved by the Court prior to sending of the notice, of the fact that a counterclaim will be asserted and of its potential effect in the event of a decision adverse to the class." 103 F.R.D. at 614 (emphasis in original).  But unlike Defendants here, the defendant in *Lessard* had already filed a counterclaim against the lead plaintiff at the time she filed for class certification, and 53 of the 207 potential class members were also subject to compulsory counterclaims.  *Id.* at 610.  As a result, there was a legitimate and substantial likelihood that at least some plaintiffs who elected to remain in the class would be served with counterclaims.  In FLSA cases that are more on point,

courts have frequently rejected defendants' pleas to include similar warnings. *E.g.*, *Guzman v. VLM, Inc.*, No. 07-CV-1126 (JG) (RER), 2007 U.S. Dist. LEXIS 75817, at *23-24 (E.D.N.Y. Oct. 11, 2007) ("I think such language is inappropriate. It may have an in terrorem effect that is disproportionate to the actual likelihood that costs or counterclaim damages will occur in any significant degree."). Plaintiffs will not be required to include notice of potential offset or counterclaim liability to opt-in plaintiffs.

Fifth, Defendants ask that the Notice's header, which reads "United States District Court for the District of Arizona," be removed because it "implies Court sponsorship." Doc. 73 at 14. Alternatively, Defendants seek a disclaimer stating that "The Court has not made any determination on the merits and the authorization to distribute this notice does not mean that the Plaintiffs have prevailed or will prevail on this matter." *Id.* Plaintiffs do not oppose this suggestion—which has been endorsed by other courts, *see, e.g.*, *Schiller v. Rite of Passage, Inc.*, No. 2:13-cv-0576-HRH, 2014 U.S. Dist. LEXIS 20508, at *18 (D. Ariz. Feb. 19, 2014)—in their Reply. Because the request is a reasonable one, Plaintiffs will be ordered either to remove the Notice's header or to include Defendants' proposed language.

Sixth, Defendants argue Plaintiffs must remove the Notice's last paragraph, which informs potential opt-ins that they "can get more information by calling the dancers' attorneys" and provides contact information for Plaintiffs' counsel. Doc. 71-1 at 2. Potential opt-in plaintiffs who receive the Notice may have numerous questions about the lawsuit they are being invited to join. The paragraph in question helpfully informs those future class members that, before deciding whether to commit time and possible expense to this action, they can direct those questions to a knowledgeable source. Defendants' proposal to remove this section will therefore be denied. In their revised Notice, however, Plaintiffs should notify potential opt-in plaintiffs that they are not to contact the Court with any questions about Plaintiffs' suit.

Finally, Defendants object to a provision in the proposed Order Plaintiffs attached to their Motion, which would prohibit Defendants "from communicating, directly or

1    indirectly, with any current or former exotic dancers about any matters which touch or

2    concern the settlement of any outstanding wage claims or other matters related to this suit

3    during the opt-in period." Doc. 71-10 at 3. Such "gag order[s]" have "an aura of a prior

4    restraint, a measure quite disfavored in the law"—at least where a "Plaintiff has failed to

5    create the clear record and specific findings that would justify this Court in considering

6    the granting of such a gag order." *See Gambo v. Lucent Techs., Inc.*, No. 05 C 3701,

7    2005 U.S. Dist. LEXIS 37998, at *24 n.4 (N.D. Ill. Dec. 22, 2005) (citation omitted).

8    Plaintiffs have made no showing that a restriction on Defendants' communications is

9    warranted in this case. The request to prohibit conversations with potential opt-in

10   plaintiffs will therefore be denied without prejudice.

11

12       IT IS THEREFORE ORDERED that Plaintiff's Amended Motion for Conditional

13   Certification and Court-Supervised Notice of Pending Collective Action (Doc. 71) is

14   granted to the extent that the Court certifies a collective action comprising all exotic

15   dancers who worked at Defendants' Phoenix and Tempe clubs in the three years prior to

16   the filing of the Second Amended Complaint.

17       IT IS FURTHER ORDERED that the parties shall meet and confer and, by

18   January 9, 2015, shall submit to the Court a revised form of Notice consistent with this

19   Order as well as a proposed schedule according to which (1) Defendants shall provide

20   Plaintiffs with potential class members' names and last known addresses and (2)

21   Plaintiffs shall send notice.

22       Dated this 17th day of December, 2014.

23

24   _____

25       Neil V. Wake
     United States District Judge

26

27

28