**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Allyson Kesley, et al., | No. CV-14-01105-PHX-NVW |
| Plaintiffs, | **ORDER** |
| v. | |
| Entertainment U.S.A. Incorporated, et al., | |
| Defendants. | |

Before the court is Plaintiffs' Motion for Representative Discovery (Doc. 155). Former named Plaintiff Allyson Kesley initiated this collective action in May 2014, seeking damages on behalf of herself and all "similarly situated" exotic dancers who worked at Defendants' nightclubs in the preceding three years. (Doc. 1 at 16-18, 23-24.) According to the Second Amended Complaint, filed by named Plaintiffs Holly Brooke and La'Shaunta Cooper ("Plaintiffs") on November 21, 2014, Defendants improperly classified class members as independent contractors, rather than employees, thereby depriving them of the minimum wage and overtime compensation to which they are entitled under the Fair Labor Standards Act ("FLSA"). (Doc. 74 at 2-3, 11.) On December 17, 2014, the court conditionally certified a "collective action comprising all exotic dancers who worked at Defendants' Phoenix and Tempe clubs in the three years prior to the filing of the Second Amended Complaint." (Doc. 92 at 21.) Plaintiffs subsequently mailed a notice to almost two thousand prospective class members, asking

them to "opt in" to the lawsuit by signing and returning a Consent to Join Wage Claim Against Christie's Cabaret.  (*See* Doc. 93-2, 95; Doc. 155 at 1-2.)

The parties dispute exactly how many dancers validly opted into the class. Plaintiffs place the number at "approximately 120." (Doc. 155 at 2.)  Defendants claim nine of those opt-in plaintiffs did not file their consent forms until after the court's May 4, 2015 deadline.  (Doc. 148 at 8.)  In addition, Defendants allege that fifty-six other dancers signed arbitration agreements with the clubs, and they have therefore moved to dismiss those dancers on the grounds that the Federal Arbitration Act bars this court from hearing their claims.  (*See* Doc. 149.)  Excluding the challenged dancers, Defendants believe the class consists of only sixty-six opt-in plaintiffs. (Doc. 148 at 8.)

On February 18, 2015, Defendants served interrogatories and requests for production on twelve of the opt-in plaintiffs, seeking "information about their employment history, litigation and criminal history" as well as "documents that showed their income, records of their earnings at the Defendants' nightclubs, their employment history, documents they may have received from the Defendants, records of conversations with Defendants' agents, and documents that support their claims for damages." (*Id.* at 1-2.)  Plaintiffs allegedly produced no documents and objected to each interrogatory and request for production.  (*Id.* at 2.)  Defendants served interrogatories and requests for production on an additional thirty-three opt-in plaintiffs on April 24, 2015.  (*Id.*)  Of those thirty-three, one class member responded by lodging the same objections that the twelve previous opt-in plaintiffs had interposed.  (*Id.*)  The other thirty-two also declined to provide any requested information, objecting that representative discovery of the class should provide Defendants sufficient information to defend this suit.  (*Id.*)

Defendants filed a Motion to Compel Discovery on June 3, 2015, arguing that they need individualized discovery in order to prepare the motion for class decertification they anticipate submitting. (Doc. 148 at 10.)  In response, Plaintiffs filed the pending Motion,

which asks that discovery be limited to ten percent of the total number of opt-in plaintiffs. (Doc. 155 at 2-3.)

"The federal courts have adopted various approaches to the scope of discovery permitted in FLSA actions. Some courts have treated opt-in plaintiffs in a collective action as ordinary party plaintiffs subject to the full range of discovery permitted by the Federal Rules of Civil Procedure, and have permitted the defendant to seek certain discovery from all opt-in plaintiffs." *Wellens v. Daiichi Sankyo Inc.*, No. C-13-00581-WHO (DMR), 2014 WL 7385990, at *2 (N.D. Cal. Dec. 29, 2014) (citation and internal quotation marks omitted) (collecting cases). "However, other courts have held that the same standards governing discovery in Rule 23 class actions should be applied to conditionally certified FLSA actions, and that discovery should be limited to class-wide and class-based discovery. These courts have limited individualized discovery, reasoning that individualized discovery would undermine the purpose and usefulness of both class actions and collective actions, and instead required only a representative sampling of the opt-in plaintiffs to respond to discovery." *Id.* at *3 (citation and internal quotation marks omitted) (collecting cases).

This latter approach is more consistent with Federal Rule of Civil Procedure 26, which provides that "the court must limit the frequency or extent of discovery . . . if it determines that . . . the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues." Fed. R. Civ. P. 26(b)(2)(C)(iii). "Permitting the full scope of discovery authorized by the Federal Rules of Civil Procedure would undermine the purpose of conditionally certifying a collective action and would be unreasonably burdensome and wasteful of the parties' and the court's resources." *Cranney v. Carriage Servs., Inc.*, No. 2:07-cv-01587-RLH-PAL, 2008 WL 2457912, at *3 (D. Nev. June 16, 2008). Even if Defendants are right that only sixty-six dancers have properly joined the

class—a question the court need not resolve at this stage—individual discovery of each plaintiff would still impose a significant and unnecessary burden on Plaintiffs.

Defendants assert that "individualized discovery is required on the issue of damages." (Doc. 158 at 8.) But the court will only consider damages if Plaintiffs first establish liability—something that would not happen if Defendants prevail on their motion to decertify. Accordingly, damages "are simply not relevant to this case at this stage of the proceedings." *See Cranney*, 2008 WL 2457912, at *2 (internal quotation marks omitted). Defendants also insist that representative discovery will be "inadequate" for preparing one of their principal defenses, unjust enrichment. (Doc. 158 at 8.) Defendants provide no explanation, however, of why this defense in particular requires individualized discovery. Such a bare assertion is unpersuasive. Finally, individualized discovery is "necessary" on Defendants' view because it will shed light on "whether the opt-ins are similarly situated to the named plaintiffs who seek to represent them." (Doc. 158 at 8.) If that were so, individualized discovery would be required in every case, yet courts have repeatedly rejected that position. As one court has explained, "if there are differences among various [class members], a sampling of plaintiffs should reveal them." *See Cranney*, 2008 WL 2457912, at *2.

Determination of the subclass of discoverable plaintiffs will have to await resolution of Defendants' Motion to Dismiss (Doc. 149). If the court grants that Motion, representative discovery will be limited to those opt-in plaintiffs who have not signed arbitration agreements; otherwise, discovery requests may be directed to all opt-ins, regardless of whether they have agreed to arbitrate. Should the court grant the Motion, the opt-in class would consist of no more than seventy-five dancers. Therefore, although Plaintiffs have requested a ten percent sampling, discovery of fifteen percent of the opt-in class will allow Defendants a fair opportunity to move for decertification.

In addition to the number of opt-ins who can be required to respond to discovery, the parties also disagree about the scope and content of Defendants' discovery requests.

The court will delay ruling on those disputes until after hearing from the parties at the oral argument scheduled for July 6, 2015.

IT IS THEREFORE ORDERED that Plaintiffs' Motion for Representative Discovery (Doc. 155) is granted. Defendants may serve discovery only on fifteen percent of those dancers who have opted in to Plaintiffs' collective action.

IT IS FURTHER ORDERED that following resolution of Defendants' Motion to Dismiss (Doc. 149), the parties shall attempt to reach an agreement as to the membership of the representative discovery class. If within two weeks after resolution of that Motion the parties have not reached an agreement, Plaintiffs shall file a notice to that effect with the court.

Dated this 2nd day of July, 2015.

Neil V. Wake
United States District Judge